The next matter, number 23-1341, Henry Donaldo Gonzalez-Arevalo v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court, Randy Olin for Mr. Gonzalez. May I reserve two minutes, please? You may. Thank you. This is an asylum claim that's based on membership, family membership, membership in Mr. Gonzalez's family. What the Board has done in this case, as it unfortunately so often does, is it sees the words retribution and reprisal, and that is the beginning and the end of its analysis of the particular social group. That's what occurred here. Before you go into that, you concede in your brief that the particular social group was inartfully phrased below. Somewhat. I agree. Would that make a difference, or please explain why you can? No, because, I mean, is anyone confused about what the social group is here, that it's Mr. Gonzalez's family? That's obvious. I know the government is trying to make the issue based on other different cases that the particular social group has been changed, but it hasn't been. The particular social group is Guatemalan males whose family. The social group is obviously Mr. Gonzalez's family, and I don't think we need to, I know that we try to define these things with as much particularity as we can, but I don't think we need to defenestrate common sense and say that we have to define these things with a mathematical precision. Everyone knows in this case the particular social group is the family, is his family. This is a mixed motive case. The agency spent not one syllable of analysis considering whether or not the mixed motive, the proffered family particular social group, was cognizable, or whether or not there was a nexus to the harm. Not a syllable. All they did was say, see the words reprisal, retribution, case closed, analysis over. Now had they spent time- Mr. Rowland, was this argued to the IJ as a mixed motive case? Yes, Your Honor, I believe it was. Yes, it had to have been. If they had taken the time to analyze the case at all, by the way, let me just say this case is Rodriguez-Villa all over again, in which Judge Sellier wrote that the agency has to consider all the evidence. They can't sweep it under the rug. They can't turn a blind eye to it. They did nothing in this case other than note that there's retribution involved, and so it can't be a basis for asylum. If they had looked into it, they would have seen two very important aspects. One is that Mr. Gonzalez was two years old when his uncle and father were murdered. He had nothing to do with the murderers being arrested and prosecuted and incarcerated. Two years old. Now in a case that this Court just decided in January, Pineda-Maldonado, this Court said that we focused our analysis on what the record revealed about whether the petitioner himself had taken any actions that led the alleged persecutor to either want vengeance against him or fear that the petitioner would take. So the important aspect of this analysis is, did the person do anything to make someone want to have retribution against him personally? Two-year-old did not have anything to do with that. So what is the reason? The reason is his membership in the family. It's the only reason. Not only is it a central reason, it's the central reason. Another aspect. Let me ask you, what about the fact that individuals who murdered the father and uncle, they were sentenced 30-plus years. That change your analysis in any way or no? Mr. Gonzalez had nothing to do with that. Now, I'll grant you, there may be an aspect of retribution, reprisal against the family, but Mr. Gonzalez had nothing to do with that. That's where the mixed motives come in. There may have been some kind of a motive, but it's not the motive with respect to Mr. Gonzalez. He is only targeted because of his family membership in the Gonzalez family. Another aspect of this I think that bears consideration that didn't get from the agency is that Mr. Gonzalez's uncle and father were killed by another family member. His grandfather's nephew, I believe, that might make him Mr. Gonzalez's cousin. I'm not good with those family relationships. But both the persecutor and the victim are in the same family. I cannot think of a more profound case of the family membership being at the root of the harm when both the persecutor and the victim are in the same family. This is an internecine situation. You say both the persecutor and the victim. Is there evidence in the record as to who committed these various harms? I'm left with the impression that we have a series of discrete acts where the perpetrator of each of the series of acts is unlinked from the others, not known to be connected. Am I wrong about that? Is there evidence that the same person or same group perpetrated these acts? I think the best answer to that, Your Honor, is that his credible testimony made it clear that the persecutors were the same people in the family that killed his uncle and his father. And the IJ, the BIA, and the government all say, in saying that there's retribution involved here, they all acknowledge, at least tacitly, if not come right out and say it, that these persecutors did this for reasons of retribution. So it had to be them. And, again, his testimony on this point was deemed credible by the agents. Was there evidence that the government could not give protection? I'm sorry? Was there evidence that the government could not give protection? I mean, we're talking about gangs, not government persecutors. And so there has to be some kind of nexus with the government. So is the allegation, in spite of the fact that two of these folks were prosecuted and sentenced to 30 years, that the government can't offer protection? The only way we're going to be able to answer that question, Your Honor, is on remand, because the agency said nothing about government involvement. And this Court cannot make a decision, obviously, on a ground that the agency didn't even consider. That's hornbook law. So on remand, yes, that's a question that will be brought up with respect to the government involvement. Okay, you have two minutes left for rebuttal, so let's hear from opposing counsel. Mr. Callahan. Would counsel for the respondent please introduce himself on the record? Thank you, Your Honor. Excuse me. Thank you, Your Honor. May it please the Court. My name is Brandon Callahan on behalf of the Attorney General. Your Honor, this case turns on Mr. Gonzales-Aravalo's burden to delineate or identify a protected ground under the statute, which he failed to do here. I think it bears remembering exactly what the social group is that Mr. Gonzales-Aravalo delineated to the agency. It was Guatemalan males who and whose family have suffered past persecution by means of murder of the father of the family by gangs. It's an obviously circular social group because experiencing persecution is a prerequisite to membership in the group. I acknowledge that this Court's recent decision in Espinoza-Ochoa requires that, for lack of a better word, the group then be edited to remove the circular portion so that it can be assessed under that construction. We would assert that that leaves the social group as Guatemalan males, not as members of the Gonzales-Aravalo family. Linguistically and logically, these two groups are very different. Guatemalan males is obviously limited to men. It's also open to any family. Members of the Gonzales-Aravalo family is limited to one family, and anyone in the family could qualify. So these are substantially different groups logically and linguistically and, honestly, grammatically. My colleague argues that editing the group under Espinoza-Ochoa leaves us with Guatemalan males whose family. With absolute respect, I don't think that that makes sense to edit the group that way because that's an incomplete thought. It leaves a hanging, possessive pronoun. Guatemalan males whose family what? Grammatically, it would be the same as changing the group to Guatemalan males who. We would never do that. It doesn't make sense. That being said, even if you accept that construction of the group, it's still very different from members of the Gonzales-Aravalo family because, again, members of the Gonzales-Aravalo family is open to any gender, and it's limited to one particular family. So if you can't morph the social group into something like members of the Gonzales-Aravalo family through application of Espinoza-Ochoa, then that leaves us with a decision where the board has already, or I should say the agency, has already decided the issue of motive. We've said that a family can be a social group. So why isn't it members of this particular family who get targeted? Even if you leave out male, it's the family that's getting targeted. Well, Your Honor, the reason this isn't a family membership case is because that's not the group that Mr. Gonzales-Aravalo, through his counsel, delineated to the agency. He certainly, I think, could have done that, and had he done that, I think this would be a very different case. But he didn't. He gave us this Guatemalan males who and whose family have experienced past persecution. But in our effort to trim it, as Espinoza says, we've got to trim it somehow and figure out how it should be trimmed, which is what you're trying to explain to us right now. And I think that if you trim it, even if we take Mr. Olin's construction of Guatemalan males whose family, that's not the same as members of the Gonzales-Aravalo family because it speaks to an entirely different pool of people. It's open to any gender. I should say it's closed to any family other than the Gonzales-Aravalo family, whereas Guatemalan males or Guatemalan males whose family is open to any family and limited to only the men in that family. So I think Barnica-Lopez applies here because this is a linguistically and logically different group than the one Mr. Olin's trying to kind of transmogrify what his client delineated into. And I think that, with respect, I think that's happening because then the nexus issue becomes much clearer if it were turned into a family social group. But I think in considering nexus, it's important to remember what exactly Mr. Gonzales-Aravalo claimed the motive for his attacks and what he fears in the future was. He claims that he's being targeted by family members of the man who murdered his father and his uncle because that man was sent to prison for 30-plus years. And that person who was in prison, from what Brother Counsel said, was also a Gonzales family member, correct? There is some, I believe, a little bit confusing discussion in the hearing transcript to that effect. And I will say that I don't fully understand how that simple fact really has any relevance because even if they were members of the same family, we still can't assume the motive for the killing. It's entirely possible, I mean, at certain points in the record, excuse me, at certain points in the record, Mr. Gonzales-Aravalo says that his father was killed in a robbery. I think in the transcript of the hearing he says, oh, it was a staged robbery and it appears to be some gang dispute. None of that is because they are family members. His father was not killed, or I should say there's no evidence in the record that his father was killed because he was related to his murderer. But Mr. Gonzales-Aravalo claims that he's being targeted because his father's murderer went to prison. These family members of the murderer want retribution for incarceration. That is the reprisal motive. There's no evidence in the record that but for the incarceration, Mr. Gonzales-Aravalo would face anything. And logically, why would he? If you're a family member of this murderer and that murderer never goes to prison, what do you need to seek retribution for? Logically, there's just no reason for it. And so I think remembering that what he's claiming the motive here is retribution for incarceration. And that's important because now we're getting further away from the family PSG nexus issue. And I think if you don't have a family PSG, this case becomes much more like Barnica-Lopez or the court's very recent decision in Ferreira where obviously family is relevant. It's kind of how we got there. But it's not the central reason for the persecution. In Ferreira, family membership was why the petitioner was in the home of her attacker, why she was in proximity to him. But she wasn't attacked because she was family. And it's kind of the same thing here. Mr. Gonzales-Aravalo is family to his father, but that's not why he's being attacked. There's no evidence that just because he's his father's son, he's being attacked or persecuted. And I think that when you then have a family, I should say, when you cannot transmogrify this into a family PSG, and you have cases like Ferreira and Moran-Portillo and Barnica-Lopez, it really requires that there's no nexus here. But all of that's to say that you have to first get past the social group. So is it improper to infer that all of these dead bodies in the same family are not being attacked because they're in the same family? Well, Your Honor, I don't think that we have to infer that because Mr. Gonzales-Aravalo told us specifically in the record why all of his family members have been murdered. He told us that his father and his uncle were shot, possibly in a robbery, possibly in some gang dispute. So that's obviously not related to his family membership or the incarceration of his murderer, because that would be logically circular. Then we've got, at some points he calls him his cousin, at some points he calls him his uncle, Raul. On page 141 of the record he says that Raul was shot, quote, caught in a fight between groups of gang members. Again, that has nothing to do with family membership or being a Guatemalan male who and whose family suffered past persecution through the killing of the father. It sounds like he was just caught in a fight between gangs, and it's just an unfortunate circumstance. The cousin, Nixon, on 142 he says Nixon was attacked and killed by gang members. Same thing, there's just no connection between that murderer and anything else. Also on 142 he references a family friend, Miguel, who's obviously not family, but he says Miguel was killed by a group of gang members who were looking to rob him, so robbery was the motive there. So I don't think we have to infer why these people were killed, and then there's no reason to extend that out to membership in the family or even, honestly, membership in the group that he delineated. He's told us these people were not killed for those reasons. So unless the court has any further questions, I would just like to renew our request that the court not allow the transfiguration of this social group into a family PSG and that the court deny the petition for review. Thank you, counsel. Any questions for my colleagues? Okay. Thank you. Thank you. Mr. Olin, you have two minutes for rebuttal. Thank you, Your Honor. Randy Olin once again for Mr. Gonzalez. Let me just speak to what, with all respect to my brother, is to me an obvious red herring, this issue of the changing of the social group. The government says it is an entirely new social group, linguistically and logically distinct, and they base this on the Bornica case. And if you look at that case, they proposed three different social groups, two of which had absolutely nothing to do with the original one that went forward. So with all respect to my brother, this is, to me, semantics bordering on sophistry. Everyone knows what the proposed social group is here. Again, Mr. Gonzalez had nothing to do with the incarceration of the people who killed his uncle and father. And there is no other reason, no evidence whatsoever in this case to show that there would be any other reason other than his family membership. Again, he didn't. You know what counsel just said? Caught in the middle of a gun fight between two opposing gangs. That may be true of the cousins. That may be true of the cousins. I don't know. It doesn't matter, Judge. It's not relevant to the issue of what's the social group, why was he targeted. He was targeted because of his family membership only. He had nothing to do with the incarceration. There's no other evidence in this case. There's no issues of extortion or gang recruitment or anything like that. There's no other conceivable reason for him to be targeted other than his family membership. But you're saying that there has to be, that necessarily has to be that inference, even though there's no specific positive evidence that that is the reason that he was targeted. I don't understand how that's not sheer speculation as to why he was targeted. Well, again, I have to go back to my answer to Judge Shelley. His testimony was deemed to be credible. All of these injuries occurred within the same family. He testified that his belief that this was, that these were the persecutors. And I don't think there's anything in the record to say that that is not the case. Thank you, Counsel. Thank you very much.